

ORIGINAL
U.S. BANKRUPTCY COURT
DISTRICT OF HAWAII
99 JUL 14 PM 4:19

1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CASE NO. 99-00443-LK |
| | ) | (Chapter 11) |
| RIVERHEAD LAND DEVELOPMENT | ) | |
| INC. | ) | March 30, 1999 |
| | ) | |
| Debtor. | ) | |
| | ) | |

PARTIAL TRANSCRIPT OF FURTHER FINAL HEARING ON
MOTION TO ANNUL AUTOMATIC STAY OR, IN THE ALTERNATIVE,
FOR RELIEF FROM AUTOMATIC STAY
BEFORE THE HONORABLE LLOYD KING
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For Bank of Hawaii | MICHAEL C. WEBB, ESQ.<br>Hawaii Building<br>745 Fort Street, 20th Floor<br>Honolulu, HI  96813 |
| For Custodian<br>  James Del Rio | ROBERT E. CHAPMAN, ESQ.<br>Amfac Tower, Suite 2100<br>700 Bishop Street<br>Honolulu, HI  96813 |
| For Robert A. Ewert | ROBERT J. FARIS, ESQ.<br>Hawaii Building<br>745 Fort Street, Suite 1400<br>Honolulu, HI  96813 |
| For Riverhead Land<br>  Development Inc. | JERROLD K. GUBEN, ESQ.<br>Grosvenor Center, Makai Tower<br>733 Bishop Street, Suite 2400<br>Honolulu, HI  96913 |
| Transcriber: | JUVELYNN FAGARAGAN<br>1164 Bishop Street, #124-200<br>Honolulu, HI  96813 |
| Audio Operator: | NEAL MAESHIRO |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
 1                         --oOo--
 2         THE CLERK:  (Calls Court to order.)
 3         MR. WEBB:  Good morning, Your Honor.  I think we
 4   have come to some agreement and I'm going to walk through it
 5   slowly here so that I hopefully don't forget anything.
 6         The agreement will be this, the motion to lift
 7   stay or annul will be resolved by the Debtor and Mr. and
 8   Mrs. Yasso promising to make a payment to Bank of Hawaii by
 9   the 15th of each month starting April 15th of $9,500, less
10   whatever the bank receives from Chaney Brooks.  So if Chaney
11   Brooks gives the bank $6,000, then Mr. and Mrs. Yasso and
12   Riverhead would pay Bank of Hawaii $3,500.  Those payments
13   will be due by the 15th of each month, and if a payment is
14   missed, then the stay will automatically terminate and we
15   will proceed in the Circuit Court.
16         The stay will be lifted for the limited purpose of
17   allowing the commissioner and his attorney to go back into
18   the Circuit Court for approval of their attorneys' fees,
19   costs and what not for those to be paid out of the 60,000
20   roughly that the commissioner is holding now.  $10,000 of
21   those funds will be left with Chaney Brooks for operating
22   capital.  And whatever is left over from that 60,000, plus
23   or minus, will then be paid to Bank of Hawaii.
24         Bank of Hawaii will stay enforcement of the
25   judgment entered in its favor and against Mr. and Mrs. Yasso
```

1  on March 18, 1999 in the Circuit Court for a period of
2  ninety days from today.
3  　　　　The stay will also be lifted to allow Bank of
4  Hawaii, Mr. and Mrs. Yasso and Riverhead to dismiss with
5  prejudice the counterclaim that was filed in the Circuit
6  Court.
7  　　　　The receiver and his attorney will remain in
8  place.  However, they will take no further action on this
9  matter.
10 　　　　And, Your Honor, that's to facilitate if in the
11 event there is a default and the stay is lifted, we don't
12 have to backtrack so far as to get a new commissioner
13 appointed and what not.
14 　　　　THE COURT:  But effectively the -- the Debtor will
15 be in control of the property?
16 　　　　MR. WEBB:  No, Your Honor.
17 　　　　THE COURT:  Who -- who's going to make leasing
18 decisions?  Mr. Del Rio is talking about his discomfort in
19 dealing with re-letting and so forth.
20 　　　　MR. WEBB:  I think we have to leave the
21 commissioner in place for those purposes, Your Honor.  We
22 can't -- I think that's the only thing that works the least
23 in a -- in a short-term.
24 　　　　It's my understanding that the plan will be up for
25 confirmation/consideration of the court very shortly and

4

1  hopefully --
2       THE COURT: Mr. Guben will be moving forth with
3  his plan.
4       MR. WEBB: Right. So I -- you know, this -- this
5  should be resolved by then.
6       MR. GUBEN: Of course, there's one -- one caveat
7  to that. I think that at least the Debtor should be allowed
8  to instruct Chaney Brooks to make its -- the payments over
9  as much as possible to the Bank of Hawaii and there's not to
10 create any other additional reserves or hold anything back
11 beyond the $10,000 that the Bank of Hawaii --
12      MR. WEBB: That's fine, Your Honor. The $10,000
13 reserve should be sufficient and anything above that should
14 be paid to Bank of Hawaii.
15      THE COURT: All right.
16      MR. WEBB: We don't want the Debtor telling them
17 not to pay specific vendors and that type of thing. We want
18 the expenses on the property paid as they are accrued.
19      THE COURT: No, it's anticipated that Chaney
20 Brooks would pay its current expenses.
21      MR. WEBB: Yes.
22      THE COURT: In relation to the --
23      MR. WEBB: Right. I mean, the idea is it collects
24 the rent, pays the current expenses and gives the surplus to
25 Bank of Hawaii the difference between --

1  THE COURT: For debt service and then the
2  difference is made up by the Yassos.
3  MR. WEBB: That is correct. And I would ask
4  counsel to make sure I haven't missed anything.
5  MR. GUBEN: One thing. They will not be drawing
6  any fees or salaries for the receiver from after this
7  forward as I understand it. Is that correct?
8  MR. WEBB: That's correct. There may be a problem
9  with that affair if they're looking at leases. Certainly,
10 those have to be kept to a minimum.
11 Your Honor, one thing I did overlook and that's
12 why Mr. Faris stood up is that effectively his client
13 retains whatever rights his client has, whatever those may
14 be.
15 MR. FARIS: In addition, Your Honor, it's my
16 assumption that if Mr. Ewert chooses to seek a refund of his
17 deposit and terminate the purchase that the stay is lifted
18 so that he could do that in the Circuit Court.
19 MR. WEBB: I think we have to give him that
20 ability, yes.
21 THE COURT: All right. Of course. Of course.
22 MR. GUBEN: That's the only thing. I thought we
23 had an understanding there would be no receiver's fees and
24 attorneys -- attorneys for the receiver's fees during this
25 period of time.

MR. WEBB: Why don't we do this, Your Honor. If a situation comes up where there would be the possibility of the receiver incurring fees, why don't we confer about that and --

THE COURT: Well, let's say this. There will be no further receiver's fees absent agreement of the parties or an order of this Court.

MR. WEBB: Or termination of the stay.

THE COURT: Of course. Of course.

MR. WEBB: Right. Okay.

THE COURT: Which would put the receiver back in full force, but somebody has to be in control.

MR. WEBB: Yes.

THE COURT: And I think at this point it has to be the Bankruptcy Court given what's going on.

MR. WEBB: Fine.

THE COURT: I mean, certainly, the receiver and his professionals should be able to go in and at least be brought up-to-date on their fees and compensation and so forth.

MR. WEBB: Sure.

MR. CHAPMAN: Your Honor, the process that we had been following with regard to new leasing was that Chaney Brooks was also acting as a leasing agent.

THE COURT: Correct.

1  MR. CHAPMAN: If they find a tenant for a vacant
2  space and negotiated a lease, then that proposed lease was
3  submitted to the Circuit Court for approval and comment by
4  all the parties.
5       It seems that that process could continue except
6  shift to this Court if you like so that if there is a
7  vacancy, Chaney Brooks goes ahead and tries to lease it and
8  then submits a lease.
9       THE COURT: Entering into a new lease would be a
10 transaction out of the ordinary course of business that this
11 Court I think will have to approve. Now, maybe we could
12 quibble on whether it's out in the ordinary course of
13 business or --
14      MR. GUBEN: I don't believe it is, Your Honor.
15 That's why I tried to short circuit this.
16      THE COURT: -- or not. In any event, if -- if, I
17 say, if the parties, meaning the Debtor and the bank, are --
18 are in agreement --
19      MR. GUBEN: On the lease -- on the new lease.
20      MR. WEBB: Done.
21      THE COURT: -- then I would be inclined to approve
22 it now.
23      Mr. Faris, I don't know if -- you should at least
24 keep Mr. Faris current as to what's going on so long as
25 you've left his client in the -- in this position.

```
 1              MR. WEBB:  Fine.
 2              THE COURT:  But if his client takes the money and,
 3    you know, decides not to or decides to take the money and
 4    let it go, then there's no further interest there.
 5              MR. WEBB:  Very well.  Your Honor, the bank is
 6    prepared to stipulate to those terms and we can -- I will
 7    prepare a stipulation to that effect and an order.
 8              THE COURT:  All right.  Mr. Guben?
 9              MR. GUBEN:  Yes.  Mr. Yasso has been advised of
10    the requirements of the stipulation.  He knows the monetary
11    requirements.  He knows the deadline that there is a drop
12    dead date of the 15th of every month after he receives
13    notification.  We would like -- I don't know when Chaney
14    Brooks generally gives that notification.  Within the first
15    seven days?  When do we normally get the Chaney Brooks?
16              MR. WEBB:  That is my understanding.
17              THE COURT:  All right.  And the terms are
18    acceptable to the receiver?
19              MR. CHAPMAN:  Yes, Your Honor.  The -- Mr. Del Rio
20    will abide by that stipulation.
21              THE COURT:  All right.  All right.  And, Mr.
22    Faris, you have no objection?
23              MR. FARIS:  No objection, Your Honor.
24              THE COURT:  Okay.  Thank you.
25              All right.  Then I assume, Mr. Webb, you will draw
```

up the stipulation of the parties.

    I would like to thank everyone for working their way through this. I think at least it offers the possibility of a long range resolution. So thank you all for your good efforts.

    And that -- is there anything else that needs attention?

    MR. WEBB: Nothing from the bank, Your Honor.

    THE COURT: All right. That concludes our -- our hearing. Thank you and good luck.

    (Whereupon, the hearing was concluded.)

    --oOo--

```
STATE OF HAWAII              )
                             )   ss.
CITY AND COUNTY OF HONOLULU  )
```

I, JUVELYNN FAGARAGAN, certified court transcriber for the United States Bankruptcy Court for the District of Hawaii, do hereby certify that the foregoing is a true and accurate transcript from the electronic sound recording of the proceedings had in connection with the above entitled cause and was transcribed by me to the best of my ability from the certified tapes furnished to me identified as follows:

Tape No. 99-49, Log Nos. 2008-2604

DATED at Honolulu, Hawaii this __9th__ day of __June__, 1999.

_____
Juvelynn Fagaragan, Transcriber